May it please the Court, I am Donald Mitchell, appearing for Edward Parks and his daughter and his mother. I would hope to reserve two minutes for rebuttal. We'll see how well I do at that. This case comes to the Court on a motion to dismiss. And for that reason, like the district court, this Court is obligated to assume, for the purposes of deciding this appeal, that the facts alleged in the appellant's complaint are true. Those facts indicate that in June of 2008, when Edward Parks returned from his job in the North Slope oil patch in Alaska, he found that in his absence, Bessie Stearman, who was the mother of his at that time seven-month-old daughter, had given custody of his daughter to two Fairbanks residents of her distant acquaintance, Rosella and Jeff Simmons. When Mr. Parks went to retrieve his daughter, the Simmons refused to relinquish custody. And the rationale for that was that in his absence and without his knowledge, the Minto Tribal Court had issued an order that gave the Simmonses physical custody of his daughter. Counsel, like the last case, this case involves to some extent the relationship between state and federal courts. The case of Simmons v. Parks is an ongoing state court matter in which the state Supreme Court has asked many, many questions about how this matter should be resolved. And custody questions are one of the most fundamentally state-controlled questions that we encounter. Why should the federal courts be involved until the state has had an opportunity to consider this state question? For two reasons. First, that if you read the prayer of the complaint in this action, the request to the district court had nothing whatsoever to do with the custody dispute between Mr. Parks and Rosella and Jeff Simmons regarding SP. This case is about jurisdiction. It's about telling the state court how to decide a case. No, with all due respect, it is not. It is about telling the native village of Minto that it has no legal authority to entangle itself in the parent-child relationship of Mr. Parks and his daughter. Now, in our principal brief, we went to some trouble to explain to this court the back story of this. Alaska is a big state but a small town. This is a matter of significant personal importance to Mr. Parks and his family. But I would not stand here this morning and not say that there are bigger fish frying in this pan. As our citation of the Sitton case and what happened there, there are jurisdictional questions at issue in this case that transcend the parent-child relationship between Mr. Parks and his daughter. There is no question about that. But I was going to save this for a rebuttal, but I'll bring it out now. And that is that in the England case, the United States Supreme Court said, and let me quote it, England v. Louisiana State Board of Medical Examiners, quote, the possibility of appellate review by the U.S. Supreme Court of a state court determination may not be substituted against the party's wishes for his right to litigate his federal claims fully in the federal courts. If you read, with all due respect to Judge Holland, who is a great judge, if you read his decision, what lurks beneath Younger v. Harris is, hey, I don't want to decide this. Go off and litigate your claims in front of Judge Lyle, who is the Superior Court judge that is presiding in Parks v. Simmons. Well, state court judges have the authority and, in fact, the duty to interpret and apply the Indian Child Welfare Act, correct? State courts have the ability to decide federal questions. That is not at issue here. What's at issue here is that the only issues presented to the district court in this case are federal questions. They are not state questions. Well, let me get you to take it outside the context that's so emotionally laden of the child custody questions in this case. Let's say you have an ordinary lawsuit on a contract that's proceeding in state court, and it happens that there is some federal regulation that's pertinent to answering the question. Can a party to the contract come into federal court, carve out that federal question, and say, I want a declaration concerning the rights of these contracting parties under federal statute XYZ? And would the federal court be obliged to entertain that, or could it say, no, we're going to abstain? That's an ongoing ‑‑ the state court has jurisdiction of that. It's an ongoing matter, Title VII or whatever kind of case it might be. Well, there is a whole body of jurisprudence that would chew up my time about that. But if, in fact, there are legitimate federal questions, what I just said from the England case is that ‑‑ So you think a party could do that? I'm saying with all due respect, I would have to know more about that. For example, again, I don't want to go down this rabbit hole. You don't like my hypothetical because it doesn't really work for you very well. No, no, no. With all due respect, that's not the issue. For example, that goes on all the time, as I understand, I'm no expert in this, but in insurance claims. There will be federal actions and state actions regarding the interpretation of the same insurance contract. And there is a body of jurisprudence that says that in those cases, federal courts, in fact, will abstain until after the state court deals with the question. And so what I was saying is it's not that I dislike your hypothetical. It is certainly an appropriate question. It's that that's not the situation in this case. And to answer that question ‑‑ Well, you've carved out a federal question that is involved in an otherwise ongoing state court matter. There's no reason to care whether the Mento Tribal Court has jurisdiction but for the fact of this custody battle. And if it were purely abstract, we wouldn't have jurisdiction for that reason. In Parks v. Simmons, Mr. Parks has not alleged any federal question. He filed a custody action against two people in Fairbanks who have physical custody of his daughter. Now, it is true that as an affirmative defense to this action, to that action, that Mr. and Mrs. Simmons filed a motion to dismiss on the grounds that they had this piece of paper from the Mento Tribal Court. Correct. And that's what the Alaska Supreme Court is asking questions about now. And Judge Lyle looked at that and said, no, I'm not going to recognize that. And that is now up on a partial petition for review. But what is interesting about Judge Lyle's decision, which I believe one of the other parties has put into this record, is that despite my asking him to do it, Judge Lyle did not deny that motion on the jurisdictional grounds. He assumed that the Mento Tribal Court had all of this power that it says that it does as a matter of federal law. But then he decided that the way they had treated Mr. Parks in its proceeding, if you can call it that, I was in the room, that in that proceeding, they had denied Mr. Parks due process. And, therefore, for that reason, Judge Lyle was not going to recognize the piece of paper from the Mento Tribal Court. That is far different from whether or not they have any governmental authority. Whether they have any governmental authority is exclusively a question of federal law. Okay, counsel, let me see if I can walk through what the consequences are of your complaint. So I have the complaint in front of me, and your first claim asks for a declaratory judgment. You basically want a declaratory judgment that the Mento is not a federally recognized tribe. Is that correct? Yes, that is correct. And that would trigger a whole series of consequences here if the Mento is not a federally recognized tribe. Beyond Mento. All right. Now, if all you're asking for – I'm just going to sort of assume away the rest of the complaint. We're just going to focus on the first prayer for relief. So if we were to take this back to district court, have Judge Holland examine that question. Is the Mento tribe a properly recognized federal tribe? And if Judge Holland said yes, then what happens? That would depend upon what Mr. Parks and his family wanted to do. I would theorize that I would be back in front of you. You would be back in front of us. All right. Let's suppose that Judge Holland said, I agree with you. They're not a properly recognized federal tribe. Okay. And that's all these issues is a declaration to that effect. Now what happens? Well, no. Two things. If you – I don't think no is kind of an answer to the question. No. No. I said no in the sense that that's not the only relief. If you go back to the prayer of the complaint, the complaint requests, A, a declaratory judgment, and, B, if the Mento tribal court is, in fact, with all due respect to them, a fake as a matter of law, that prayer asks for an injunction which has Judge Holland telling the Mento people to stay out of Mr. Parks' parent-child relationship. That is the injunctive relief that is requested in the complaint. And that's the problem with this is that the defendants in the federal action are not defendants in Parks v. Simmons, and the defendants in Parks v. Simmons are not defendants in the federal action. How this action could – Okay. Just give me a chance to ask a couple of questions, okay? I would like to ask just a couple of things, and then you have time to talk. If all we were granting was declaratory – Mr. Parks is here because of his daughter. He was here for – I understand the request for an injunction. Yes. If you were just – if all you got from Judge Holland was a declaratory judgment, is there anything you could do with that declaratory judgment? I certainly would take it to Judge Lyle, and I would say the idea that you have allowed these people – he has denied their motion to intervene already. You know, this is playing out. I'm not saying he's – and saying, see what the federal court did. You have to stop what you're doing. No. What I would say to Judge Lyle is that, Your Honor, this is a federal question. It should be just all federal questions, while you have certainly jurisdiction to decide federal questions as a threshold matter, as the United States Supreme Court said in England, and I have filed an England reservation in Parks v. Simmons, so Judge Lyle is already aware of this. It's not in this record, however, which is why I haven't mentioned it. That Mr. Parks, under England, had a right to have this federal question decided in the first instance by a federal court. Here is what they decided. I think you might be interested in that, Judge Lyle. Judge Lyle is – unlike Younger v. Harris, unlike where the woman tried to sue the Superior Court judge in California because she didn't like the custody outcome, Judge Lyle is not a defendant in this case. When you file an England reservation, as I understand it, what it means is that you're asking the state court not to decide certain questions of federal importance because those will have to be decided at a later date. Now, if you are – if you hadn't filed the England reservation, Judge Lyle certainly could have decided in the first instance the federal question, couldn't he? State courts can certainly decide federal questions. There's no dispute from me standing at this podium this morning on that one. Absolutely not. The question is, just as in the Sitton case, and that's the reason that I brought the Sitton case to this Court's attention, is that procedurally, procedurally, this case – there are a couple of ways in which it's different than in this particular case, but procedurally, this case threads the needle exactly the way that the Sitton case threaded the needle between a federal action here and an Alaska Superior Court action on custody in Fairbanks. In that case, Judge Holland, the exact same judge, the exact same judge, if you read his opinion, and it's part of this record, said that Ms. Sitton had done it absolutely right in terms of bifurcating the federal question on jurisdiction from the state court action on the custody of trying to get her daughter back. Now we are five or six years later back in front of the same judge with almost exactly the same fact pattern, and now we find that Younger v. Harris, which was not implicated in the Sitton litigation – I represented Ms. Sitton in that litigation, so I know – Judge Holland had nothing to do with Younger v. Harris, and now all of a sudden, Younger v. Harris, which, as this Court knows, if you read the case law on Younger v. Harris, including this Court's own decisions, particularly the America's Source Bergen, there is no possibility of this case implicating Younger v. Harris. Now the only way that they can get there from here is that in their briefing the appellees say, well, Younger v. Harris is implicated because if Mr. Parts is correct on the merits in his jurisdictional arguments and if the native village of Minto is enjoined by the district court here, they would not be able to participate as amicus. And when was the last time an amicus implicated Younger v. Harris? They do not cite in their brief – If you have filed an England reservation in the state court before Judge Lyle, then why don't you – why isn't the only thing you really need from the federal court just the declaratory judgment rather than an injunction? If Judge Lyle saw that there was a declaratory relief issued by federal court, wouldn't that be sufficient for then Judge Lyle to understand what needed to be done next without having to obtain an injunction against the Minto? The record in this case, which the court must accept as true as described in the complaint, describes what the Minto people have done to my clients. Judge Lyle does not have jurisdiction over the native village of Minto, as I have said earlier. They are not a party to Parks v. Simmons. They are subject to the jurisdiction of the district court. Their attorney is sitting in this room this morning. What we want, and I'm not kidding, is we want Judge Holland to issue an injunction after he issues his declaratory judgment that tells the native village of Minto and the people that front for them to stay out of my client's parent-child relationship, period. That is why we have done this. This is not a theoretical matter. This is not a law review article case. This is real people who have suffered real damage as exhibited in that complaint, and I appreciate my time. You have exceeded your time. Thank you. We will hear from the other side. We have two counsels. Good morning, and may it please the Court. My name is Lane McFadden. I represent the United States Department of the Interior. I will be sharing the last five minutes of my argument with counsel for the native village of Minto and the Minto Tribal Court. Counsel, why is this a younger abstention case? The state court question ultimately is whether Mr. Parks or the Simmonses get custody of this child, which is a state law question ultimately as to who is the appropriate person or persons to have custody over a child. I think the test, as I understand it, for younger abstention is whether the federal suit has the effect of enjoining the state court action. But regardless of what the tribal court said or whether it had the authority to say it one way or the other, ultimately the state court can still look at Alaska's state law, can't it? I guess I don't understand why it enjoins the state action. To answer the last part of the question first, this would have the practical effect of an injunction against the state court action. Against the action, not just, I mean, let me just try to clarify my worry about it. I understand maybe there's another abstention doctrine that works here. But to me, younger is about stopping the state court action in its tracks, whereas this strikes me as telling the state court how to decide a substantive issue in the ongoing litigation, which is slightly different, maybe. I think the 1971 Supreme Court case of Samuels, which is the case of the Supreme Court, said that younger applies to civil cases and requests for declaratory relief. It gets at this. There the court said, and this court quotes it extensively in Gilbertson, that the court should abstain if the declaratory judgment is essentially intended to be res judicata on the ongoing state court proceedings in such a way that it dictates the results. So there's not an actual direct injunction against the state court or the state's action there, but certainly the outcome of the state court proceedings is predetermined at the point where the federal court says that the Mento tribal court is not a federally recognized tribe and could have no jurisdiction over an equal proceeding for child custody. Well, couldn't the state court still say that as a matter of state law, the Simmonses are the proper people to have custody, regardless of whether the Mento tribal court even exists or made a determination in this case? Yes. There is a separate question of state law, not for this court, which is the question of who are the proper custodians as a matter of state law, and that question still has to be answered. Right. The Superior Court said that in its view, and I think this is correct, that if it decided the Mento tribal court's decision did not warrant full faith and credit from the state court, then that would transform the proceeding before it into one of a child custody case to be decided under state law and the provisions of the court. Under what circumstances could it decide full faith and credit? Only if the Mento tribe doesn't have jurisdiction, or is there any other basis? The Alaska state court and the Alaska Supreme Court has recently reconfirmed this, and the decision we provided this court last week has said that there are due process limits on the proceedings to which it will afford full faith and credit. The full faith and credit provision of ICWA says that the United States and state court shall have full faith and credit to the extent it extends full faith and credit to the decisions of any other competent tribunal like another state. And Alaska views that there being a due process constraint. If Alaska thought that Mr. Parks had not been afforded due process, hadn't been given proper notice of hearings before the Mento tribal court, that it could refuse to give full faith and credit to the judgment of the Mento? Yes. And then does Alaska get to decide the question itself? The question of? Or does it go back to the Mento to proceed on appropriate due process? The Superior Court has said that it would then proceed to decide the custody question itself as a matter of Alaska state law. And so there would be – But we're actually dealing with two – there's sort of two different problems here that you might attack the Mento from. One is the subject of the declaratory judgment in federal court, which is does the Mento even have jurisdiction as a federally recognized tribe? Right. And the second is a different question, which was, was Mr. Parks afforded his due process rights before the Mento so that we have to afford full faith and credit to the judgment of the court? Right. Okay. Let me pick up with the England reservation. Given that they filed an England reservation in state court, and I didn't see that in the record. I looked in the blue brief and there is one reference to England which didn't tell me that they had filed an England reservation. So this is kind of news to me today. And if you've got any further information on that to confirm or deny that, I'd appreciate it. But assuming that they have filed a proper England reservation in the state court, does the federal court – is there any reason then that a federal court couldn't decide the question that's been reserved in the state court? That is, does the Mento – is the Mento a properly recognized federal tribe? The England reservation in this case, in the state case that was filed, was filed after the briefs before this court were filed, which is why the reservation itself is not discussed in the briefing. Is that timely? It is not, Your Honor. This court has said, and I can give you a citation for this, in the case of Communications Telesystems International versus the California Public Utilities Commission, it's 196F3-1011. This court has said that England reservations do not apply in the younger context. Well, here's a question that I have as to whether this issue is even properly joined, regardless of federal jurisdiction or not. If – the state Supreme Court has already asked a series of questions to be determined about due process. If Mr. Parks prevails in demonstrating a lack of due process in his situation, then I don't even understand how it matters whether they're a federally recognized tribe or not. If the state court declines to give full faith and credit and decides everything under a matter of state law, it matters not whether they even exist. So I guess it seems premature in some way or advisory in some way, which is a different question than the younger question. And I wonder if you could comment on that. Yes, Your Honor. It is premature because the case or controversy that brings them to court, the issue that gives them any standing to raise these federal questions, is being resolved, as we speak, by the Alaska Superior Court and then ultimately presumably will be passed on by the Alaska Supreme Court. And so that will, I mean, certainly narrow the rather extraordinary relief that they're seeking. It will also answer many of these underlying questions. And it goes to Your Honor's earlier insinuation that it might be a separate abstention doctrine besides that of younger, which might apply here, which is the doctrine of equitable abstention. This Court talked about in Coates v. Woods and Chivy v. Fostos and Peterson v. Babbitt, that line of cases in which it says that when there are ongoing state court proceedings that will resolve an underlying domestic relations issue, this Court will refrain from exercising its jurisdiction to allow those issues, to allow the parties' relationships to all be resolved by the more appropriate venue, which is the state court. And that is a doctrine which does not require the question of the extent to which this proceeding will have the effect of an injunction on the state court proceeding, because the younger cases, the long history of younger abstention, is primarily outside of the domestic relations context. And this Court has that other line of cases discussed in our brief, in which this Court has said that domestic relations cases, when they are the primary issue in a case, are to be decided more appropriately by the state courts, especially when they will resolve the law. Are you talking about the Eng and Brandt and those kinds of cases? Only indirectly, Your Honor. Eng and Brandt is specifically about diversity jurisdiction and the interpretation of 1332. But in Coates v. Woods was a 1983 action against an array of state parties, the judges, the various social workers, the father, what have you, or I'm sorry, the husband, what have you. And the state court's decisions about their relationship and the domestic relations questions that underlie it had already been decided, and the federal courts nevertheless abstained from reopening those issues by answering federal questions. And said that in the realm of domestic relations, where the domestic relations is sort of the underlying primary issue or the core issue, as the cases call it, the federal court probably will decline to exercise its jurisdiction. And we think that, too, is an appropriate abstention doctrine to rely on here, where the complaint really seeks a very broad relief, as the appellants have conceded, against possibly all of the native villages in Alaska, the declaration that they are improperly federally recognized and could not exercise equal jurisdiction. All of which may turn out to be totally unnecessary, because as this Court has insinuated, these questions will be the question of custody and the question of the appropriateness of the Minto tribal court's order and who is the appropriate guardian of the children, what have you. All of this will be resolved by the Alaska State Courts, as it should be. And in that situation, the district court properly abstained. And I would just point out that that situation is what separates this case from the normal line of cases, including Sanders, which is discussed in the reply brief, where federal courts do ask the question about whether a tribal court properly exercised jurisdiction in a particular context. And certainly there are many cases where federal courts do answer that question. But that question is never answered where there is a contemporaneous state court proceeding that will resolve the underlying case or controversy. That is the distinguishing characteristic of this case. If we were to abstain in this case under Younger, allow the Alaska Supreme Court to do its thing, and if the Alaska court were to decide to afford full faith and credit to the Minto judgment, then what happens at that point? If the Alaska Supreme Court decided to come back into federal court and say, okay, look, the Younger problem has gone away, I want a declaration that the Minto are not a properly recognized federal tribe. I would say that to the extent that he feels his federal rights are impinged on by the Alaska Supreme Court decision, he can petition the United States Supreme Court. If he feels the federal questions are unanswered, it's possible he could come to district court. I think that might be. Presumably the Alaska Supreme Court is not going to answer the question of jurisdiction because there's been an England reservation. I assume that hasn't been briefed. That's right. So all they're really going to deal with is the due process. The procedural due process question, the notice question. Yes, Your Honor, I think that's the most likely outcome. I would say that I... So does he have any... So if the Alaska Supreme Court decides that, I understand he can then take an appeal to the Supreme Court, but not on the grounds that the Minto lack jurisdiction. There is some possibility that Rooker-Feldman doctrine would prevent his bringing the jurisdictional question then to the district court. This is a question I would ask the court if it's really interested in briefing, and I'd also... But there's a timing question, I think, is there not? It depends. If the federal case is filed before the state case, even if the state case comes to a decision first, I don't think there's a Rooker-Feldman bar to the federal court looking at it. I may be wrong about that, but I think it matters where the first filing takes place. That may be, Your Honor, and I admit I'm not sufficiently well-versed in Rooker-Feldman to answer your questions intelligently here. I would like the opportunity to file a letter in response to that if this is something that the court thinks bears on its answer. What avenue is there, short of withdrawing his England Reservation state court, does Mr. Parks have for challenging the jurisdiction of the Minto? Well, he could have challenged it as part of his state court case. He could have raised that federal court claim in state court. He could have brought this case to federal court and have stayed out of the state court and have presented this question squarely to this court. How could he have presented the question? How could he have gotten into federal court on this question? You mean by not filing a state court action at all? By not filing a state court action at all and not creating a situation where a detention is required. Was there any possibility of direct review of the Minto decision? Of the tribal court's decision? Yes, the tribal court's decision. No, Your Honor, I don't believe so. They don't have a tribal appellate court? I'm not aware of a tribal appellate procedure counsel for the tribe whose time I owe. And they can't even take it to the U.S. Supreme Court, can they? I believe that's correct, yes, Your Honor. And that is part and parcel of the schemes laid out by ICWA. I mean, this goes outside of the scope of what we're talking about. But that is what was the intent of the statute, was to give some power to the tribal courts to decide these matters. I owe time to my co-counsel, and I ask that this court's judgment be affirmed. Thank you. We'll hear from Mr. Osborne. Thank you, Your Honor. Steve Osborne for the Native Village of Minto. First of all, Minto does have an appeals court, by the way, which Mr. Parks did not take an advantage of. And second, had he lost there, he could have, I believe, I'd have to check on this if it's important to you, but I believe he could have filed a federal action to challenge the tribal courts. What effect under tribal laws and procedures, what effect does the failure to take advantage of the internal appellate procedure have, within its own universe, not as a matter of federal law, but as a matter of tribal law in practice? I believe it would make the judgment final as a matter of tribal law. I'm not familiar with any case law or customary law from the tribe, however, to verify that. Could he have raised his jurisdictional objections to the Minto tribal court in the tribal court? Well, he could have, and I believe he tried to. He tried to, but what? But was unsuccessful in raising them. Unsuccessful in the merits, or they refused to hear the claim? Well, they claimed that the court refused to hear the claim. I wasn't there. And his remedy from the tribal court would have been to go to the Minto appellate court? Correct. And he could have raised his jurisdictional claims there, and if that had been unavailing, then what? Then he could have challenged, he could have brought a similar type of challenge in distant court. It would have had to have been a declaratory judgment action similar to what he brought here. Similar, yes. Couldn't he file a civil rights act saying that the tribal court system deprived him of his due process? I believe so. But what he did do was to file the federal court action that's under appeal here, and there were two purposes for that. The first one was to restore custody of SP to Mr. Parks. Did he file the federal claim before he filed the state? Yes, he did. And then the second thing was to have the court declare that Minto is not a federally recognized tribe because Congress and the Secretary did not do what they thought they had done for the past 20 straight years. Or if they did do what they thought they had done and recognized Minto and other Alaska tribes, then they had violated the Constitution in so doing. The problem is that those two things have nothing to do with one another, as counsel made clear. Parks argues repeatedly that the federal case has nothing to do with child custody, at least when they're opposing the younger abstention. But if that's the case, then there's simply no standing to bring these challenges to federal Indian policy in Alaska. This case is really controlled by the Indian Child Welfare Act, and everybody agrees that Minto is an Indian tribe for purposes of that act. So these other claims about broader federal recognition simply are not relevant to the custody issue, and therefore there's no standing, no case or controversy in the federal court. Even if Judge Holland had agreed with the claims that were presented, the federal question that was presented as the basis of jurisdiction, that is whether Minto is federally recognized, he could not have afforded the relief that was requested because Minto is an Indian tribe under ICWA. It had the authority to issue the orders that it did, and Judge Holland could not enjoin the tribal court from exercising the authority that Congress had specifically affirmed that it had in ICWA. Therefore, the injury complained of was not redressable, and the parks lacked standing. I believe that counsel admits that Minto is an ICWA tribe, an Indian tribe under that act, but argues that ICWA does not delegate to such Alaska tribes any authority to initiate their own child custody proceedings, as Minto did in this case, unless the tribe first applies to the Secretary of the Interior to reassume jurisdiction under 25 U.S.C. section 1918. But that argument is foreclosed by this court's rulings in the Venati case in 1991, and more recently by the Caltag decision, both of which hold that tribes have the inherent authority to initiate child custody proceedings, authority affirmed in ICWA to protect their children. And with that, unless there are questions? That provides an alternative ground for affirmance in the event that the court finds that younger abstention was not warranted. Thank you. Mr. Mitchell, although you used up all your time, we'll give you two minutes for rebuttal. I can't do it in two minutes, but let me try. You'll have to do your best. I understand, I understand. First, this argument gives the court an understanding of what an analytical mess this entire subject area has been in Alaska for 20 years. There are people like Edward Parks and his family that have been caught up in this. Second, this is about Younger v. Harris. In Gilbertson v. Albright, this court said, quote, the critical date for purposes of deciding whether abstention principles apply is the date the federal action was filed. This action was filed, as the court noted, in May of 2009. The Parks v. Simmons case was filed in September of 2009. How could Mr. Parks and his family have filed this action to obtain an injunction against an action that he would file three months in the future? Why on earth would he want to enjoin his own custody action? He's trying to get his daughter back. Third, to add to the complexity of all of this, yes, the Indian Child Welfare Act says that communities in Alaska, such as Minto, that are native villages for the purposes of the Alaska Native Claims Settlement Act, are Indian tribes for the purposes of that statute. As the counsel that was just up here said, Section 108 of Inilka, I'm sorry, of ICWA, says that nobody in Alaska who is an Indian tribe for the purposes of that statute can have any of its own jurisdiction until it goes through the petition process. There are provisions of ICWA that says that an ICWA Indian tribe in Alaska that does not have any jurisdiction of its own has an automatic right to intervene in a state proceeding. Mr. Parks would have no problem with that. But what happened, without going into when then-District Judge Kleinfeld got reversed by this court in Venati, IRA, the P keeps moving under the shell. First it's, well, ICWA says we can do this, and then when you say, well, but wait a minute, you didn't petition to get any jurisdiction under the statute, they go, well, we didn't need to, because we've always been a sovereign Indian nation. So independent of ICWA, we don't have to deal with that. And the answer is, well, really, when did you become a sovereign Indian nation? And that is a subject that the District Court in Alaska has spent, with all due respect to it, a fair amount of effort not to allow any litigant who does have standing, does anybody really believe that Edward Parks, who has had his parental rights terminated by the Minto Tribal Court, has no Article III standing? Counsel, you have exceeded your time. And I appreciate your forbearance, Your Honor, other than to say that I appreciate the convolution of this entire subject area, and we look forward to your decision. Thank you. We appreciate the arguments of all counsel. They've been very helpful to us. And the case is submitted. We will stand adjourned for this morning's session.
judges: Alarcon, Graber, Bybee